IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN LUU, )<br>   Plaintiff, )<br>)<br> v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>   Defendant. ) | CIVIL ACTION NO. 09-0060<br><br>JUDGE MCVERRY |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 10, 2009

**I. Introduction**

Plaintiff, John Luu, brought this action pursuant to 42 U.S.C. §§ 405(g), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his application for disability insurance benefits ("DIB") under title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403.

**II. Background**

 **A. <u>Facts</u>**

Plaintiff was born on June 27, 1952. Plaintiff's description of his educational experience is inconsistent. At one point, he indicates that the highest level of school which he completed is twelfth grade. T. 200. At another point, he indicates that he has completed two years of college. T. 174. Plaintiff has also completed heating and air conditioning school. T. 200. Plaintiff worked as a machine operator from 1979 to 2000. T. 53. He lost that job

1

because the company moved to Mexico. T. 56. He later worked as a machinist for a week in August 2004 and claims that he quit because of his inability to do the job due to his impairments. T. 195. Plaintiff also worked as a cashier at the convenience store owned by himself and his wife from August 2002 to October 2004. T. 58 & 112. Plaintiff indicates at one point that he did not work full time as a cashier. T. 117. Plaintiff indicates at another point that he worked as a cashier full time. T. 57. Plaintiff has also watched his grandchildren. T. 116.

Plaintiff alleges disability as of September 18, 2000, due to low back pain, left leg pain, left shoulder pain, numbness in left foot, diabetes, a stroke, a heart attack, high blood pressure, high cholesterol, hepatitis C, and degenerative disc disease. Plaintiff's Brief in Support of Motion for Summary Judgment at 7. The Plaintiff worked as a cashier for his own business between 2002 and 2004. T. 57. The ALJ found that Plaintiff's work as a cashier qualified as substantial gainful employment and that Plaintiff engaged in this substantial gainful employment after alleging disability in September 18, 2000. T. 15.

### B.     Procedural History

Plaintiff initially filed an application for DIB on June 6, 2005, in which he claimed total disability since September 18, 2000. T. 12. An administrative hearing was held on July 17, 2007, before Administrative Law Judge Douglas Abruzzo ("ALJ"). T. 12 & 25. Plaintiff was represented by counsel and testified at the hearing. Judy Schollaert, an impartial vocational expert, also testified at the hearing. T. 12.

On August 28, 2007, the ALJ rendered a decision unfavorable to Plaintiff in which he found that Plaintiff retained the ability to perform past relevant work as a cashier as well as

other light or sedentary jobs which exist in the region and, therefore, he was not "disabled" within the meaning of the Act. T. 24-25.

The ALJ's decision became the final decision of the Commissioner on November 25, 2008, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. T. 6.

On May 28, 2009, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred (1) in generally showing bias against claimants and their treating physicians; (2) in finding that Plaintiff could perform light work; and (3) in finding that Plaintiff's daily activities were inconsistent with his subjective complaints and therefore that Plaintiff's statements were not credible. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.     Legal Analysis**

    A.     Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has

3

defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job.  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment.  *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the first step of the sequential evaluation process.  T. 15.   In making this determination, the ALJ concluded that the Plaintiff was engaged in substantial gainful activity as a cashier in the family-owned convenience store from August 1, 2002, to October 14, 2004, and was therefore not disabled during this time period.  T. 15.  Plaintiff does not dispute that

his work as a cashier constituted substantial gainful activity. The ALJ also determined that Plaintiff was not disabled within the meaning of the Act at the third step of the sequential evaluation process because he concluded that Plaintiff did not have a combination of impairments that equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 18. The ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fourth and fifth steps of the sequential evaluation process as well. T. 24. In making this determination, the ALJ concluded that Plaintiff is capable of performing past relevant work as a cashier at a convenience store and that he is capable of performing other light and sedentary jobs which exist in the region. T. 24.

### B. Discussion

#### 1. *The ALJ did not show bias against Plaintiff or his treating physicians*

Plaintiff argues that the ALJ ruled that he was not disabled because the ALJ is biased towards Social Security claimants and their treating physicians. Plaintiff's Motion for Summary Judgment at 19. Plaintiff cites comments made by the ALJ on the NPR blog site "Marketplace" as evidence of the ALJ's bias. *Id.* at 20. Plaintiff quotes the ALJ:

> Some doctors go overboard on diagnoses and treatment because they sense the "pot of gold" in having a fairly young patient (on Medicare for many years to come) with a reliable source of payment for constant treatment. Lawyers and other non-attorney representative[s] can receive fees as a percentage of the back benefits awarded to a claimant. Once a claimant has a legal representative, one can actually track how the alleged impairments become much worse, with new impairments and symptoms added as the case matures. A judge with some experience can almost recite verbatim the same story we hear from virtually EVERY claimant, suggesting they have received training from the national organization of the claimant's attorneys. *Id.*

These comments are not directed specifically at this case.  Thus, if these comments would disqualify the ALJ from this case, then they would disqualify the ALJ from all Social Security cases.

"An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 416.1440 (1994); 20 C.F.R. § 404.940 (1994).  If Plaintiff had filed a motion requesting recusal at the appropriate time, Plaintiff would be entitled to a new hearing before another ALJ if the bias of the presiding ALJ would prevent Plaintiff from receiving a full and fair hearing.  *Ventura v. Shalala*, 55 F.3d 900, 904 (3d Cir. 1995).   To preserve his claim of bias, Plaintiff must, at his earliest opportunity, before or during the hearing, move for the ALJ to recuse himself; the ALJ must then decide whether to continue the hearing or to withdraw.  20 C.F.R. § 416.1440 (1994); 20 C.F.R. § 404.940 (1994); *Ventura*, 55 F.3d at 904.  Plaintiff is deemed to have waived his claim of bias if he fails to raise it in the manner specified in 20 C.F.R. § 416.1440.  *Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984).  Plaintiff failed to move for the ALJ's recusal before or during the hearing; therefore, the bias claim is waived.

Assuming arguendo that Plaintiff did not waive his claim of bias, his claim of bias would fail nevertheless because Plaintiff has not proven that the behavior of the ALJ prevented him from receiving a full and fair hearing.  This court must focus its inquiry not on whether the judge harbored subjective bias against the Plaintiff, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias.  *In re Antar,* 71 F.3d 97, 101 (3d Cir.1995).   A comparison of the behavior of the ALJ here to the behavior of the ALJ in previous cases within the Third Circuit, in which bias has been found, reflects that no such

bias existed here.  For instance, in *Ventura*, 55 F.3d at 903, the claimant proved that the ALJ was operating under a bias by showing that the ALJ questioned the claimant in a coercive, intimidating way and interfered with the introduction of evidence regarding the claimant's physical pain.  The ALJ here did not question Plaintiff in a coercive manner nor did he interfere with the introduction of evidence.

More recently, in a case involving a school district, the Third Circuit held that the former position of the ALJ as a public school administrator was insufficient to establish bias requiring recusal.  *M.S. v. Mullica Township Board of Education*, 263 Fed. Appx. 264, 268 (3d Cir. 2008).  By way of analogy, it seems logical to conclude that the views of the instant ALJ, which he expressed in a blog, do not establish bias requiring recusal in this case.  In both *Mullica Township Board of Education* and the case at hand, the general views of the ALJ did not show bias regarding the more specific case.  *Id.*; Plaintiff's Motion for Summary Judgment at 20.  In his blog, the ALJ did not make any specific reference to the case at hand.  *Id.*

In a recent Western District of Pennsylvania case, *Fasciano v. Commissioner of Soc. Sec.*, 2009 WL 765175 at *1, n.1 (W.D.Pa. 2009), a claimant made an identical accusation of bias by ALJ Abruzzo based on the blog comments cited by Plaintiff here.  Judge Cercone found that statements made by ALJ Abruzzo merely expressed a personal opinion regarding the existence of fraud in social security cases in general.  These statements did not demonstrate impermissible bias against all claimants.  *Id.*  Nor did these statements demonstrate bias against the particular Plaintiff in question because the statements had nothing to do with the Plaintiff or the case at hand.  *Id.*  This Court agrees with the reasoning and result in *Fasciano*.

Plaintiff neglects to acknowledge in his brief that other comments made by the ALJ in his blog indicate that the ALJ has a balanced perspective, to wit:

> Occasionally – but rarely – do I see a claimant with an entirely fraudulent claim. The clear majority of the claimants who appear before me do have some physical or mental impairment.  The real issue is whether that person can meet the definition of "disability" which was intentionally set very high by Congress to provide income to only those whose injuries/illnesses are very debilitating. *Id.*

By conceding that the majority of Social Security claimants have some sort of impairment and by indicating that he is simply applying the standard set by Congress, the ALJ demonstrates that he harbors no bias against Social Security claimants in general.

Therefore, in this case, no bias on the part of the presiding ALJ prevented Plaintiff from receiving a full and fair hearing.  Plaintiff is not entitled to a new hearing before another ALJ to determine whether he is entitled to disability benefits.

> 2. *The ALJ properly found that Plaintiff has the residual functional capacity to perform work requiring light exertion based on the weight the ALJ properly gave to various medical opinions in his hypothetical*

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Rather, the Court must review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Plaintiff argues that the ALJ improperly concluded that Plaintiff was able to perform work at a light exertion level. Plaintiff's Motion for Summary Judgment at 6. Plaintiff argues, based primarily on the medical opinion of Dr. Ou, that Plaintiff is limited to sedentary work. Plaintiff's Motion for Summary Judgment at 6.

The ALJ must consider all medical evidence in the record and provide adequate explanation for disregarding or rejecting evidence; such explanation is especially important when testimony of the claimant's treating physician is rejected. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). The ALJ's reason for rejecting a treating physician's opinion must be based upon contradictory medical evidence, not on the ALJ's own credibility judgments, speculation, or lay opinion. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Frankenfeld v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

In this case, the ALJ reviewed all of the medical evidence in the record and found that the medical opinions of Dr. Alcoff, Dr. Gleason, and Dr. Ou deserved only minimal weight in light of the contradictory medical opinions of other treating physicians. The ALJ gave the opinion of Dr. Alcoff, a consultative physician, only minimal weight because Dr. Alcoff examined Plaintiff only once and because his conclusions were not supported by the treatment records of the other physicians who examined Plaintiff. T. 23. The ALJ also afforded the opinion of Dr. Gleason, another consultative physician, only minimal weight because Dr. Gleason had examined Plaintiff only once, there were inconsistencies in his opinion, and a complete lack of objective findings. T. 23-24. The ALJ gave adequate explanations for giving the opinions of Dr. Alcoff and Dr. Gleason minimal weight.

10

Dr. Ou, Plaintiff's primary care physician and his treating physician for many of his ailments, opined on June 29, 2007, that plaintiff had such severe impairments that Plaintiff could not work at all because he could not lift 10 pounds, stand for more than two hours in an eight-hour workday, or sit for more than two hours in an eight-hour workday. T. 24. Dr. Ou also opined that Plaintiff needed to sit with his legs elevated and that he was severely restricted in the use of his left arm. T. 24.

The ALJ's decision to give Dr. Ou's opinion minimal weight was supported by substantial evidence. T. 24. The ALJ found as follows:

> The severe restrictions placed on the claimant by [Dr. Ou] are simply not supported by the lack of objective findings made by Dr. Ou himself, by the treating digestive doctor, Dr. Agrawal, the treating cardiologist, Dr. Madhavan, the claimant's conservative course of medical treatment, or by the claimant's self-reported activities of daily living . . . Rather, in light of the objective findings and the claimant's wide range of daily activities, this opinion of Dr. Ou seems to be offered by a sympathetic treating physician in the hope of helping his claimant receive disability insurance benefits, when the record as a whole does not justify a finding of disabled. T. 24.

The ALJ gave Dr. Ou's opinion minimal weight based, at least in part, on the contradictory evidence provided by other treating physicians and by consultative physicians. T. 24. For instance, the ALJ noted that Dr. Agrawal, who was treating Plaintiff for hepatitis C, reported that, in April 2006, Plaintiff was no longer displaying any hepatitis-related symptoms. T. 21. The sedentary classification was not necessary if Plaintiff was not showing signs of fatigue due to hepatitis. T. 21. Therefore, the ALJ could reasonably conclude that hepatitis symptoms were not impairing Plaintiff's ability to work. The ALJ also noted that Dr. Madhavan, Plaintiff's cardiologist, suggested that Plaintiff have an MRI; this MRI showed that Plaintiff did not have degenerative disc disease. T. 21. Thus, the ALJ concluded that Plaintiff's back pain

was not a source of impairment.  The sit/stand/walk option was unnecessary if Plaintiff no longer had degenerative disc disease.  T. 21.  Also, the ALJ noted that Dr. Gleason, a consultative physician, reported that Plaintiff had 4/5 motor power in his upper and lower extremities.  T. 20.  Thus, Plaintiff's limitations in the use of his extremities were not a source of impairment.  Given all of this medical evidence which contradicted the opinion of Dr. Ou, the ALJ properly gave Dr. Ou's opinion minimal weight; the decision of the ALJ that Plaintiff could perform light work was supported by substantial evidence.

Moreover, in formulating the hypothetical for the vocational expert, the ALJ still took Dr. Ou's medical opinion into consideration.  The ALJ posed this hypothetical to the vocational expert: "Avoid use of ropes, ladders, scaffolds, for sedentary occupations only, requires a sit/stand/walk option . . . Limited to no more than occasional overhead pushing, pulling, with the  . . . upper bilateral extremities."  T. 118.  Dr. Ou opined that Plaintiff could sit for only 45 minutes at one time and that Plaintiff could stand for only 20 minutes at one time.  T. 643.  Dr. Ou also opined that Plaintiff needed to walk every 30 minutes.  T. 644.  The ALJ took Dr. Ou's opinion into account when he included a sit/stand/walk option in the hypothetical.  T. 118.  Dr. Ou also indicated that Plaintiff was weak in the left hand and arm.  T. 642.  The ALJ considered this weakness when he indicated that Plaintiff was limited to no more than occasional overhead pushing.  T. 118.

Thus, the Court finds that the ALJ appropriately addressed all of Plaintiff's limitations which were supported by substantial evidence in this hypothetical, regardless of which physician suggested each limitation.  Therefore, the ALJ posed a comprehensive and accurate hypothetical to the vocational expert, and the ALJ was justified in relying on the

testimony of the vocational expert to find that light work existed which Plaintiff had the residual functional capacity to perform. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). The testimony of the vocational expert constituted substantial evidence to support the ALJ's finding.

    3.    *The ALJ properly found that Plaintiff's testimony regarding his ailments was not credible*

Plaintiff argues that the ALJ erred in finding that Plaintiff's daily activities were inconsistent with his subjective complaints of disabling pain. Plaintiff's Motion for Summary Judgment at 12.

It is the responsibility of the ALJ to make findings on the credibility of Plaintiff's statements. *See Dobrolowsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *see also Kephart v. Richardson*, 505 F.2d 1089 (3d Cir. 1974). The ALJ need only support his credibility determinations by substantial evidence on the record as a whole. *Miller v. Commissioner of Soc. Sec.*, 172 F.3d 303, 304 n.1 (3d Cir. 1999). If the ALJ concludes that Plaintiff's testimony is not credible, then the ALJ must indicate the basis for that conclusion in his decision. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

Here, the ALJ had substantial evidence to support his conclusion that Plaintiff's allegations were exaggerated and, therefore, not credible. T. 19. The ALJ referred to this substantial evidence in his decision. For instance, the ALJ found that the minimal objective findings on physical examination and Plaintiff's conservative course of treatment did not support Plaintiff's subjective allegations of disability. T. 21. The ALJ found that Plaintiff's self-reported daily activities were not consistent with his alleged disability. T. 21. The ALJ

also found that since the onset of his alleged disability, Plaintiff attended training for air conditioning repair, worked full time as a manager/cashier/checker of a family owned convenience store, and worked as a baby sitter at a YMCA, all of which were activities inconsistent with Plaintiff's subjective allegations. T. 22.  Thus, the ALJ found inconsistency between Plaintiff's statements and other evidence, allowing the ALJ to discredit Plaintiff's statements.  T. 22.  The Court concludes that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's testimony was not credible.

**IV.     Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a range of work at the light and sedentary exertion levels.  The Court rejects Plaintiff's accusation that the ALJ was biased.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LUU, | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-0060 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | JUDGE MCVERRY |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
|       Defendant. | ) | |

**ORDER OF COURT**

**AND NOW**, this 10th day of August, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

    1.    The Motion for Summary Judgment filed by Plaintiff, John Luu (Document No. 7) is **DENIED**;

    2.    The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 13) is **GRANTED**; and

    3.    The Clerk of Court will docket this case as closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:      Karl E. Osterhout, Esquire

           Lee J. Karl, Assistant U.S. Attorney